IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ELIZABETH C. ABE, LEANN K. MORAN, SHERYL A. KATTAN and ELIZABETH POLAK, each individually and on behalf of persons similarly situated, )<br><br>Plaintiffs, )<br>v. )<br>VIRGINIA DEPARTMENT OF ENVIRONMENTAL QUALITY )<br><br>Defendant. ) | Civil Action No: 3:20-cv-270 |

**COMPLAINT UNDER THE EQUAL PAY ACT**

This is an action alleging violation of the Equal Pay Act of 1963 to restrain payment of wages to employees of one sex at rates less than the rates paid to employees of the opposite sex, and to collect back wages due to employees as a result of such unlawful payment. When the Commonwealth came to understand in 2019 that the long-standing policy of using pay history to determine a new hire's salary was a biased policy, nothing was done to address the inequity endured by veteran women at the Department of Environmental Quality. Wage inequality affects the pay of more than 200 women employed as Scientists at the Department of Environmental Quality. Lead Plaintiffs and a class of similarly situated female employees ask the Court to enjoin unlawful compensation discrimination and order wages equal to those paid to their male counterparts for performing equal work.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343. This action is authorized and instituted pursuant to Sections 16(b) of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(b) to enforce the requirements of the Equal Pay Act of 1963, codified as Section 6(d) of the FLSA, 29 U.S.C. § 206(d).

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United State District Court for the Eastern District of Virginia, Richmond Division.

## PARTIES

3. Plaintiffs Elizabeth C. Abe, of Roanoke, VA.; LeAnn K. Moran, of Virginia Beach, VA.; Elizabeth Polak, of Richmond, VA; and Sheryl A. Kattan, of Virginia Beach, VA. and those similarly situated ("the Class") are permitted to join in this action by Sections 16(c) of the FLSA, 29 U.S.C. §§ 216(c) and 217, as amended. Members of the Class have elected to opt-in to the Class and participate in this action in writing.

4. Elizabeth C. Abe received her education at Lynchburg College, Virginia Commonwealth University, and Virginia Polytechnic Institute and State University, and has a Bachelor of Arts Degree, as well as Masters studies in Landscape Architecture. Her career at Defendant Virginia Department of Environmental Quality ("Defendant" or "DEQ") commenced in 2012. Her role title is Environmental Specialist II. Abe is responsible for

the Erosion Sediment Control (ESC) and Stormwater Management (SWM) programs. She maintains dual combined administrator certifications in both ESC & SWM and implements the Construction General Permit including Plan Review Procedures.  She works in the Blue Ridge Regional Office in Salem, Virginia.

5.  LeAnn K. Moran is a certified Professional Geologist with Bachelor of Science and Master of Science degrees in Geology.  She worked from November 16, 1992, with the State Water Control Board, the predecessor to DEQ.  Moran was an Environmental Specialist II at the Tidewater Regional Office at the time of her departure with the agency. First she started as a Geologist in the Tank Program, then worked as an Environmental Engineer for the Virginia Water Protection Program.  She was subsequently hired back again in the Tank Program as an Environmental Specialist II with a working title of Remediation Geologist.  Core responsibilities of her job included overseeing assessment and corrective action of contamination at over 1,000 sites, making evaluations of risks of groundwater pollution, and performing other environmental management.  She ended her employment with DEQ, last working on January 20, 2020.

6.  Elizabeth Polak was educated at the University of Georgia, receiving a Bachelor of Arts in 1988.  Polak did Postgraduate Work at the University of York, in England, achieving a Diploma in Environmental Economics and Environmental Management in 1998.  Then she received a

Master's Degree of Earth and Environmental Management from the University of South Carolina, in 2000. She started at DEQ in 2009, worked in Coastal Zone Management. Her job title was Environmental Specialist II. Polak's core responsibilities included negotiations of federally funded grant contracts; participation in developing project proposals and producing project products; and management of 10+ projects and long-range strategic planning. She last worked for DEQ in February 2019.

7. Sheryl Kattan received a Bachelor of Arts Degree in Biology from Bridgewater College and began working for the State Water Control Board in 1992 in the Tank Program. For the last 25 years, she has worked as a permit writer/inspector with the VWPP Program. In 2005, she competed for and received the title of Team Leader. Her core responsibilities include negotiating minimal impacts to wetlands and waters of the Commonwealth via issuance of VWP permits, resolving unauthorized impacts via compliance and enforcement mechanisms, and assisting in regulation, guidance, and database development to assist her Program. Early in her career, she helped support the establishment of Virginia's Nontidal Wetlands Law and regulations, and the legal challenges that followed. She has won several awards for her technical achievements, leadership, outreach, and volunteerism. She works in the Tidewater Regional Office in Virginia Beach as an Environmental Specialist II.

8. At all relevant times, Defendant DEQ has been a department of the Commonwealth of Virginia. DEQ was established to protect and improve the environment for Virginians. DEQ administers state and federal laws and regulations for air quality, water quality, water supply and land protection.

9. In addition, DEQ programs cover a variety of environmental activities, such as improving the ability of businesses and local governments to protect the environment and offering technical and financial assistance for air and water quality improvements. Through its six regional offices, DEQ issues permits, conducts inspections and monitoring, and enforces regulations and permits.

10. At all relevant times, Defendant has continuously been a public agency within the meaning of Sections 3(x) of the FLSA, 29 U.S.C. § 203(d).

11. Defendant's regional offices are operated by a central administrative headquarters at 1111 East Main Street, Richmond, and all matters of hiring and salary are determined at such headquarters for all offices of DEQ. DEQ operates as a single establishment statewide.

12. At all relevant times, Defendant has acted directly or indirectly as an employer in relation to the Class employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

13. At all relevant times, Defendant has continuously employed employees engaged in the regulation of commerce within the meaning of Sections 3(b), (i), and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i), and (j).

8. At all relevant times, Defendant DEQ has been a department of the Commonwealth of Virginia. DEQ was established to protect and improve the environment for Virginians. DEQ administers state and federal laws and regulations for air quality, water quality, water supply and land protection.

9. In addition, DEQ programs cover a variety of environmental activities, such as improving the ability of businesses and local governments to protect the environment and offering technical and financial assistance for air and water quality improvements. Through its six regional offices, DEQ issues permits, conducts inspections and monitoring, and enforces regulations and permits.

10. At all relevant times, Defendant has continuously been a public agency within the meaning of Sections 3(x) of the FLSA, 29 U.S.C. § 203(d).

11. Defendant's regional offices are operated by a central administrative headquarters at 1111 East Main Street, Richmond, and all matters of hiring and salary are determined at such headquarters for all offices of DEQ. DEQ operates as a single establishment statewide.

12. At all relevant times, Defendant has acted directly or indirectly as an employer in relation to the Class employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

13. At all relevant times, Defendant has continuously employed employees engaged in the regulation of commerce within the meaning of Sections 3(b), (i), and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i), and (j).

14. At all relevant times, Defendant has continuously been an enterprise engaged in commerce within the meaning of Sections 3(r) and (s) of the FLSA, 29 U.S.C. §§ 203(r) and (s), said enterprise has continuously been a public agency with regulatory powers affecting interstate commerce.

15. Polak filed a Charge of Discrimination (No. 438-2020-00302) with the EEOC in Richmond on December 3, 2019. In her Charge, Polak complains of pay discrimination against women, on her own behalf and on behalf of persons similarly situated, by DEQ, in violation of the Equal Pay Act and the pay provisions of Title VII of Civil Rights Act.

16. Moran filed a similar Charge of Discrimination against DEQ with the EEOC (No. 438-2020-00707) on February 25, 2020.

17. Abe filed a similar Charge of Discrimination against DEQ with the EEOC (No. 438-2020-00711) on February 25, 2020.

## STATEMENT OF CLAIMS

18. Starting earlier than March 1, 2017, and continuing to July 1, 2019, Defendant has violated Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) and 215(a)(2), by paying Abe, Moran, Polak and the other members of the Class lower wages than those paid to their male colleagues for performing equal work as Environmental Specialist II classified full-time employees.

19. Abe has been employed by DEQ since 2012; Moran (including employment by a predecessor Agency) since 1992; Polak since 2009; and

6

Kattan since 1992. Each worked most or all of their career at DEQ when DEQ would use the previous compensation policy.

20. The Commonwealth's Department of Human Resource Management ("DHRM") had by Compensation Policy 3.05 specified the historic salary of the new hire a Pay Factor entitled to consideration and DEQ adhered to such Policy.

21. Consequently, salary offered to each woman by a prior employer, regardless of its bias, was used to determine her starting pay at DEQ.

22. Eventually, Christopher M. Grab, Director of the Office of Equal Employment and Dispute Resolution, part of DHRM, wrote to Peggy M. Hawkins, Human Resource Manager for DEQ, alerting DEQ to this disparate salary impact upon new hires and rehires of female professional employees by DEQ in the Fiscal Year ending June 30, 2017.

23. DEQ acknowledged such disparate impact upon females in a letter from Hawkins, dated January 4, 2018, which specifically stated that deviations occur when an applicant for a position at DEQ has "a higher previous salary" than other professional applicants.

24. The Attorney General of Virginia, Mark R. Herring, addressed the issue of "previous salary" or "salary history" in a Brief submitted by Virginia as an Amicus, in *Greater Virginia Chamber of Commerce v. City of Philadelphia*, United States Court of Appeals for the 3rd Circuit, Nos. 18-2175, 18-2176, filed September 28, 2018. The Attorney General submitted to the

Court that a "persistent gender wage gap is the continuing result of gender discrimination in the workplace---and employers' use of salary history in setting wages perpetuates the gap further still." *Id.*, at Docket 3113047629, at page 10.

25. Further, the Attorney General maintained that salary history is not a gender-neutral measure of an individual's value to the employer; that an individual's past salary may reflect intentional discrimination, unconscious bias, or systematic undervaluing of work performed by women. *Id.*, at page 16. General Herring asserted that to justify a wage differential on the basis of salary history is entirely inconsistent with the Equal Pay Act's goal of eradicating pay discrimination reflecting gender-based disparities. *Id.*, at page 19.

26. On June 12, 2019, Governor Ralph S. Northam announced to his Cabinet Secretaries the implementation of his Employment Equity Initiative, "taking steps that are long overdue to ensure that our processes are free of unconscious bias."

27. On June 20, 2019, the Governor announced to State Employees that the State Compensation Policy would change, a reform that "will eliminate provisions that base starting pay and future salary adjustments solely on previous or existing salary."

28.     Effective July 1, 2019, DEQ discontinued its discriminatory practice by making changes stipulated in the DHRM Compensation Policy 3.05.

29.     However, no action was taken, in the aftermath, to remedy the wage disparity suffered and endured by women hired and employed as Environmental Specialists II in the many years *prior to July 1, 2019*.

30.     Applicants in the Class when hired, were each required to disclose prior employment and prior salaries on their DEQ job application forms.

31.     DEQ utilized the prior salary data of the Class to fix a starting salary for each female employee.

32.     As compensation for employment at DEQ only rarely allows for pay increases larger than the General Assembly's budget provision, a few percentage points across-the-board for state employees, starting salary has a career impact: a state employee starting low in salary when compared to her male peers never catches up.

33.     Use of prior salaries reinforces, redoubles and replicates years of historic salary discrimination against female workers.

34.     As a result of the acts complained of above, and for other reasons, Defendant unlawfully has withheld and is continuing to withhold the payment of wages due to all such female employees who received lower compensation than their male colleagues. The practice necessarily allowed DEQ to pay wages to females at their start and throughout their careers at less than the rates

9

paid to male employees in the same establishment for substantially equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

35. The unlawful practices complained of in the paragraphs above were willful.

36. The past salary of a job applicant cannot be a "factor other than sex" when used alone *or in combination with job-related factors to fix her new salary.* This is because it is impossible to differentiate the impact of two causes of the pay problem, or to verify that a woman's prior salary itself was not reflective of systematic bias.

## PRAYER FOR RELIEF

Wherefore Plaintiffs and the Class respectfully request that this Court:

A. Certify under the Equal Pay Act and the FLSA a class consisting of women who were employed by DEQ three (3) years prior to the filing of this Complaint, but no later than June 30, 2019, in the job title Environmental Specialist II.

B. Direct DEQ to provide contact information to the Class, through counsel, for all potential members of the Class who might opt to participate, including full name, street address or postal box, personal email address, and a non-work telephone number, and allow Plaintiffs, at the earliest time possible, to give notice of this collective action to all women who are presently,

10

or have been in the past three years, been employed by Defendant as Environmental Specialist II.

  C. Restrain any discrimination or retaliation against persons who seek to participate as claimants or witnesses in this matter.

  D. Grant a permanent injunction enjoining DEQ, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating within any of its establishments between employees on the basis of sex, by paying wages to employees of one sex at rates less than the rates at which it pays wages to employees of the opposite sex for substantially equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

  E. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

  F. Grant a judgment requiring Defendant to pay appropriate back wages in amounts to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to employees whose wages are being or were unlawfully withheld as a result of the acts complained of above, including the Class of similarly situated female employees paid lower compensation than their male counterparts for performing equal work. Compensation should include amounts to remedy the diminishment of the value of the retirement

11

programs (through the Virginia Retirement System) caused by disparate salaries.

    G.    Award the Plaintiffs' costs and expenses of this action, including any necessary expert witness fees, along with reasonable attorney's fees for their legal counsel as provided by statute.

    H.    Issue an Order appointing the undersigned counsel as Class Counsel pursuant to 29 U.S.C. 216 (b).

    I.    Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY DEMAND

Plaintiffs request jury trial on all issues of fact.

Respectfully Submitted,

    */s/ Sydney E. Rab*
Sydney E. Rab, Esquire (VSB #15105)
The Rab Law Firm
5407 Langdon Drive
Richmond, Va. 23225
Tele: 804-822-8981
Msydrab@comcast.net

    */s/ Tim Schulte*
Tim Schulte (VSB #41881)
Blackwell N. Shelley, Jr. (VSB #28142)
Shelley Cupp Schulte, P.C.
2020 Monument Avenue, First Floor
Richmond VA 23220
(804) 644-9700

        (804) 278-9634 [fax]
        schulte@scs-work.com
        shelley@scs-work.com

          */s/ Timothy E. Cupp*
        Timothy E. Cupp (VSB #23017)
        Shelley Cupp Schulte, P.C.
        1951 Evelyn Byrd Avenue, Suite D
        Harrisonburg, VA 22803
        (540) 432-9988
        (804) 278-9634 [fax]
        Cupp@scs-work.com

        *Counsel for Plaintiffs*