IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ELIZABETH C. ABE, et al., individually and
on behalf of persons similarly situated,
              Plaintiffs,

v.                                       Civil Action No. 3:20-cv-270

VIRGINIA DEPARTMENT OF
ENVIRONMENTAL QUALITY,
              Defendant.

## MEMORANDUM ORDER

This matter comes before the Court on the Virginia Department of Environmental Quality's ("DEQ") motion to decertify the plaintiffs' conditionally certified collective action. (ECF No. 61.) For the following reasons, the Court grants DEQ's motion.

## I. BACKGROUND

The plaintiffs, current and former female DEQ employees, allege that DEQ's past[1] practice of using pay history to determine a new hire's salary perpetuates the gender wage gap and violates the Equal Pay Act ("EPA").[2] On June 29, 2020, the Court conditionally certified the following class as to the EPA claim: "Female employees of the Virginia Department of Environmental Quality who were hired before July 1, 2019, and who work or worked as

---

[1] As of July 1, 2019, DEQ no longer uses pay history to determine a new hire's salary.

[2] DEQ notes that "a single unifying pay practice" did not apply to all the plaintiffs. (ECF No. 62, at 5.) Rather, "different policies applicable in different years dictated how state agencies, including DEQ, established a new employee's salary." (Id.) One policy applied from 1980 to 1993, another from 1993 to 2000, and yet another, "with several revisions," between 2000 and 2019. (Id. at 5-8.) The policies in place from 1980 to 2000 used prior salary as the "predominant factor" in setting starting salary. (Id. at 6.) The policy in place from 2000 to 2019 used prior salary as "one among many factors that an agency [could] consider when setting an employee's starting salary." (Id. at 7-8.)

Environmental Specialist II [("ES II")³] anytime between April 16, 2017, through the present."

(ECF No. 19, at 1.) Along with four lead plaintiffs, twenty other women have joined the suit,

bringing the number of plaintiffs to twenty-four.⁴ DEQ argues that the plaintiffs "cannot satisfy

their burden to prove that they are similarly situated, making collective treatment of their EPA

claims improper." (ECF No. 61, at 1.) Of particular importance for resolution of this motion,

the Court recently ruled that DEQ may assert prior salary as an affirmative defense to the

plaintiffs' EPA claims (the "partial summary judgment ruling").

## II. <u>DISCUSSION</u>

Courts use a two-stage process to decide if a group of plaintiffs qualifies as "similarly

situated" under the FLSA. *See, e.g., Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va.

2008). At the first stage, courts consider whether to conditionally certify the class under a

lenient standard. At the second stage (also called the 'decertification' or 'merits' stage), courts

consider whether the class will proceed to trial under a more stringent standard.

"If, after discovery, it is apparent that plaintiffs are not similarly situated, the court may

decertify the collective action and dismiss the claims of the opt-in plaintiffs without prejudice."

*LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 468 (E.D. Va. 2014). To determine

whether the opt-in plaintiffs are similarly situated, courts assess the "issues common to the

proposed class that are central to the disposition of the FLSA claims and [whether] such common

---

³ DEQ says that ES II "is a 'role title' that does not identify or describe a DEQ employee's specific job or work duties." (ECF No. 62, at 3.) Instead, the title encompasses "many different skill sets, duties, work titles and functions" and applies to most of DEQ's employees. (*Id.*) DEQ further explains that employees "have a 'mapped title' that more specifically identifies their position and career path designation" and a "'work title'" that "describes an employee's job duties and functions." (*Id.*) "The ES II role title includes approximately 142 mapped titles and approximately 130 work titles." (*Id.*)

⁴ Laura D. Corl and Karen Haley-Wingate opted into the class and subsequently dropped out of the case. (ECF Nos. 48, 49.)

issues can be substantially adjudicated without consideration of facts unique or particularized as to each class member." *Houston*, 591 F. Supp. 3d at 832. The common issues, however, need not be identical. "Rather, the inquiry is whether the presence of common issues allows the class-wide claims to be addressed without becoming bogged down by individual differences among class members." *Id.*

Courts have used two approaches when considering motions to decertify an FLSA collective action—the so-called ad hoc approach and the modern approach. Under either approach, largely due to the partial summary judgment ruling, the Court finds that the plaintiffs "are not similarly situated." *LaFleur*, 30 F. Supp. 3d at 468.

### A. The Ad Hoc Approach

When a defendant files a motion to decertify on "similarly situated" grounds, courts typically consider three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) defenses which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Sharer v. Tandberg, Inc.*, No. 1:06cv626, 2007 WL 676220, at *2 (E.D. Va. Feb. 27, 2007). The plaintiffs "bear the burden of showing by a preponderance of the evidence that their claims are 'similarly situated.'" *LaFleur*, 30 F. Supp. 3d at 468. Courts use this so-called ad hoc approach even though the "FLSA does not define 'similarly situated' and the Fourth Circuit has not set out a standard for this term in the context of a FLSA collective action." *Andreana v. Va. Beach City Pub. Schs.*, No. 2:17cv574, 2019 WL 1756530, at *3 (E.D. Va. Apr. 19, 2019).

### 1. Disparate Factual and Employment Settings

DEQ argues that the plaintiffs' and comparators' mapped and working titles show that they "do not perform the same jobs at DEQ" and, therefore, are not "similarly situated." (ECF

No. 62, at 14-26.)  DEQ also observes that the plaintiffs did not start their employment at DEQ

under similar circumstances.  (*Id.* at 22-26.)

When analyzing the ad hoc approach's first factor, courts consider "plaintiffs' job duties,

geographic location, supervision, and salary as well as plaintiffs' evidence of a . . . policy that

violates the FLSA."  *LaFleur*, 30 F. Supp. 3d at 469.  "[S]imilarity of facts and employment

settings does not mean that 'there can be no differences among class members or that an

individualized inquiry may not be necessary in connection with fashioning the specific relief or

damages to be awarded to each class member.'"  *Andreana*, 2019 WL 1756530, at * 3 (quoting

*Houston*, 591 F. Supp. 2d at 831).  Instead, "the Court must look at 'all of the *relevant* aspects of

[their] employment situation.'"  *Id.* (emphasis and alteration in original) (quoting *Ercegovich v.

Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

When the Court issued it partial summary judgment ruling, it resolved the predominant

common issue affecting the plaintiffs' claims—namely, whether DEQ may assert prior salary

history as an affirmative defense.  With that issue resolved, the myriad differences between the

plaintiffs, such as their varied job duties and the different circumstances and policies affecting

their hiring and pay, mandate decertification.  Although the plaintiffs allege they "were victims

of a common policy or scheme or plan that violated the law," *Marroquin v. Canales*, 236 F.R.D.

257, 260 (D. Md. 2006), their cases turn on individualized questions regarding their similarity to

their comparators and whether any factors other than sex explain why DEQ paid the comparators

more than the plaintiffs.  Thus, this factor favors of decertification.

### 2. Individual Defenses

"The individualized defenses factor assesses whether potential defenses pertain to the

plaintiff class or whether the potential defenses require proof of individualized facts at trial."

4

*Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007). DEQ says that its defenses apply individually and not to the class generally. (ECF No. 62, at 27.) DEQ lists ten defenses that they claim turn on individualized evidence regarding a plaintiff and her alleged comparators. (*Id.* at 28-29.) These defenses fall into two categories: (1) the plaintiffs have not identified an appropriate comparator[5] and (2) a factor other than sex explains any salary differential. DEQ also contends that the plaintiffs' "entire premise for collective treatment of this matter rests on the erroneous notion that the use of prior salary as a factor in setting initial compensation is somehow a per se violation of the EPA." (*Id.* at 26.)

The individualized defenses factor supports decertification. The Court's partial summary judgment ruling rejected the plaintiffs' argument that using prior salary as a factor in setting an employee's starting salary constitutes a per se violation of the EPA. With that common issue resolved, individualized defenses risk making the collective action unmanageable. The twenty-four plaintiffs have ten work titles. (ECF No. 63, at 5-6 (chart identifying the plaintiffs and comparators by work title).) A "representative sampling" of the plaintiffs and comparators within each work title *potentially could* testify on the issue of whether the plaintiffs have identified appropriate comparators. *LaFleur*, 30 F. Supp. 3d at 473 ("Testimony of a representative sampling of plaintiffs in a collective action is a procedure often used in FLSA class actions.").[6] But the Court harbors grave concerns about the efficacy of such an approach in this case. Moreover, representative sampling will not work when determining whether a factor other than sex explains the salary differential between a plaintiff and her comparators. The Court

---

[5] This defense applies to twenty of the twenty-four plaintiffs. (*Id.* at 28.)

[6] Although the plaintiffs have identified fifty-two comparators, they do not intend to use all fifty-two at trial. (ECF No. 63, at 5 n.4.) They claim that "ten or twelve witnesses might . . . be able to prove the Plaintiffs' entire case." (*Id.* at 7.)

must look at every plaintiff individually to make that determination. Thus, the individualized

defenses factor favors decertification.

### 3. Fairness and Procedural Considerations

To assess fairness and procedural considerations, courts consider

> the primary objectives of allowance of a collective action under § 216(b), namely
> (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to
> limit the controversy to one proceeding which efficiently resolves common issues
> of law and fact that arose from the same alleged activity. The Court also must
> determine whether it can coherently manage the class in a manner that will not
> prejudice any party.

*Rawls*, 244 F.R.D. at 302 (cleaned up) (quoting *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410

(W.D. Pa. 2000)). Allowing this case to continue as a collective action reduces the plaintiffs'

costs by allowing them to pool resources. Nevertheless, the Court's resolution of the overriding

common issue that united the class—whether using salary history constitutes a per se violation of

the EPA—makes allowing this case to continue as a collective action inefficient and unwieldy

because the plaintiffs' cases no longer turn on common issues.[7] Indeed, the cases now hinge on

---

[7] The Court's partial summary judgment ruling did not decide whether *EEOC v. Maryland Insurance Administration*, 879 F.3d 114 (4th Cir. 2018), imposes a job-relatedness requirement for affirmative defenses in EPA claims. Although the plaintiffs may raise this issue during later stages of this litigation, the Court still finds that fairness and procedural considerations weigh against allowing this case to proceed as a collective action because the plaintiffs' cases turn on individualized inquiries.

First, the plaintiffs must identify a proper comparator to establish a prima facie EPA claim. *See Evans v. Int'l Paper Co.*, 936 F.3d 183, 196 (4th Cir. 2019). This requires an individualized comparison between the plaintiff and her proposed comparator. If a plaintiff does not identify a proper comparator, then the Court need not determine whether DEQ has successfully raised an affirmative defense to the plaintiffs' claims.

If a plaintiff does identify a proper comparator, then DEQ may argue that several factors—not just prior salary—explain the pay differential between the plaintiff and the comparator. The Court must then determine whether DEQ has shown that those other factors actually explain the pay differential between the plaintiff and her comparator. *See Md. Ins. Admin.*, 879 F.3d at 123. This will require an individualized inquiry.

Determining whether *Maryland Insurance* imposes a job-relatedness requirement on affirmative defenses in EPA cases likely will not arise in all the plaintiffs' cases. And, even if it

individualized comparisons between each plaintiff and her comparators and determinations regarding whether DEQ can successfully assert an affirmative defense as to each plaintiff. This makes it impossible for the Court to "coherently manage the class in a manner that will not prejudice any party." *Id.* Indeed, if the Court allowed this case to proceed to trial as a collective action, jurors likely would have difficulty making the individualized determinations this case requires. Although this may help some class members, it almost certainly would hurt others. Thus, this factor favors decertification.

*   *   *

Because all three of the ad-hoc factors favor decertification, the Court decertifies the collective action.

### B. The Modern Approach

The plaintiffs correctly note that the "*ad hoc* approach has been cast into doubt in recent years." (ECF No. 63, at 10 (emphasis in original).) For instance, last year the Second Circuit criticized the ad hoc approach because "district courts employing the ad hoc factors consider the ways in which the plaintiffs are factually *disparate* and the defenses are *individualized*" instead of "considering the ways in which the opt-in plaintiffs are *similar* in ways material to the disposition of their FLSA claims." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 517 (2d Cir. 2020) (emphasis in original). This misplaced focus conflicts with the FLSA and unduly limits plaintiffs' "right" to collective action. *See id.* at 515-17.

Thus, the *Chipotle* court explained that "named plaintiffs and opt-in plaintiffs" are "'similarly situated'" if they "are alike with regard to some material aspect of their litigation." *Id.* at 516. In other words, "if named plaintiffs and party plaintiffs share legal or factual

---

does, this narrow common remaining issue does not change the fundamentally individualized nature of the inquiry in these cases.

7

similarities material to the disposition of their claims, 'dissimilarities in other respects should not defeat collective treatment.'" *Id.* (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018)).[8]  The *Chipotle* court noted that collective treatment is not an all-or-nothing proposition. "If the opt-in plaintiffs are similar to the named plaintiffs in some respects material to the disposition of their claims, collective treatment may be *to that extent* appropriate, as it may *to that extent* facilitate the collective litigation of the party plaintiffs' claims." *Chipotle*, 954 F.3d at 516 (emphasis in original).[9]

Even application of the more lenient *Chipotle* test mandates decertification. As described above, now that the Court has resolved the predominant issue common to the entire class—whether DEQ may assert prior salary as an affirmative defense—the plaintiffs no longer "share legal or factual similarities material to the disposition of their claim."[10] *Id.* at 516. Accordingly, the Court decertifies the collective action.

---

[8] This mirrors the standard applied by the Eastern District of Virginia in 2014: "[C]ourts have determined if potential class members are similarly situated by assessing the existence of 'issues common to the proposed class that are central to the disposition of the FLSA claims and that such common issues can be substantially adjudicated without consideration of facts unique or particularized as to each class member.'" *LaFleur*, 30 F. Supp. 3d at 468 (quoting *Houston*, 591 F. Supp. 2d at 831).

[9] "District courts are well equipped to manage cases in this way. For example, Rule 42 provides for the possibility of partial consolidation for trial, to the extent separate actions involve common questions of law or fact." *Id.* at 516 n.5.

[10] For the reasons stated above, the narrow remaining issue that *may* arise in multiple plaintiffs' claims—whether *Maryland Insurance* imposes a job-relatedness requirement for EPA affirmative defenses—does not compel the denial of the decertification motion. Collective treatment of that issue will not facilitate collective litigation of the plaintiffs' claims because of the overwhelmingly individualized nature of EPA cases.

8

## III. CONCLUSION

For the reasons stated herein, the Court GRANTS DEQ's motion for decertification. (ECF No. 61.)   Accordingly, the Court DISMISSES the claims of the opt-in plaintiffs WITHOUT PREJUDICE.  The claims of the named plaintiffs shall proceed.

Further, the Court DIRECTS the parties to file briefs within fourteen days of this Order regarding whether the Court should sever the remaining claims pursuant to Federal Rule of Civil Procedure 21.  Each party may respond to the opposing party's brief six days after filing of the same.

After the Court determines whether it should sever the remaining claims, it will set a new deadline for the filing of any remaining summary judgment motions.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

/s/
John A. Gibney, Jr.
United States District Judge

Date: 6 April 2021
Richmond, VA

9