IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ELIZABETH POLAK,
        Plaintiff,

v.                                                    Civil Action No. 3:20cv270

VIRGINIA DEPARTMENT OF
ENVIRONMENTAL QUALITY,
        Defendant.

## MEMORANDUM ORDER

This matter comes before the Court on the summary judgment motion filed by the defendant, the Virginia Department of Environmental Quality ("DEQ"). (ECF No. 100.) DEQ claims that the undisputed facts show that the plaintiff, Elizabeth Polak, cannot establish the essential elements of her Equal Pay Act ("EPA") claim because she "has failed to identify an appropriate comparator performing substantially equal work." (ECF No. 101, at 1.) Even when viewing the evidence in the light most favorable to Polak, the undisputed facts entitle DEQ to summary judgment because Polak has not identified a proper comparator. Accordingly, the Court grants DEQ's summary judgment motion.[1]

\*     \*     \*

Polak contends that DEQ violated the EPA by paying her less than Henry Shepard Moon, Jr., even though she and Moon did "substantially equal work." (ECF No. 102, at 1.) DEQ claims,

---

[1] Federal Rule of Civil Procedure 56(a) directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a summary judgment motion, the court must draw all reasonable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

among other things, that Polak "has not identified a true comparator." (ECF No. 101, at 11.)  The Court agrees with DEQ.

"The EPA prohibits gender-based discrimination by employers resulting in unequal pay for equal work." *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018).  "To establish a prima facie case under the EPA, a plaintiff must demonstrate: (1) the employer paid different wages to an employee of the opposite sex, (2) for equal work on jobs requiring equal skill, effort, and responsibility, which jobs (3) all are performed under similar working conditions." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 196 (4th Cir. 2019).  The comparators and the plaintiff "must have virtually identical jobs." *Id.*  "Generally, it is not enough to simply show that the comparators hold the same title and the same general responsibility as the plaintiff." *Id.*  In other words, a plaintiff cannot allege the "necessary equality" by "rely[ing] on broad generalizations at a high level of abstraction." *Spencer v. Va. State Univ.*, 919 F.3d 199, 204 (4th Cir. 2019).

Although Polak and Moon both worked as coastal planners at DEQ's central office under the supervision of Virginia Coastal Zone Management ("CZM") Program Manager Laura McKay, the undisputed evidence shows that they do not "have virtually identical jobs." *Evans*, 936 F.3d at 196.  In 2002, the Virginia Institute of Marine Science of the College of William & Mary ("VIMS") hired Moon after DEQ awarded it a CZM grant that allowed it to hire a coastal planner. (ECF No. 101-2, at 2; ECF No. 101, at 4-5; ECF No. 102, at 4.)[2]  VIMS's grant applications for fiscal years 2016, 2017, and 2018 included a list of duties that Moon had to perform.  (ECF No.

---

[2] "DEQ . . . does not contest *for the purposes of summary judgment* that it was Moon's joint employer" with VIMS. (ECF No. 101, at 21 (emphasis added).)  Polak claims that DEQ retracted its denial "that Moon was even an employee of DEQ." (ECF No. 102, at 2.)  She supports this assertion by citing DEQ's limited concession. (*Id.* at 2 n.1.)  But Polak conspicuously omits the italicized portion of the quotation in a deceptive attempt to broaden the scope of DEQ's concession.

101-2, at 2, 6-7, 10-11, 14-15; ECF No. 101, at 6; ECF No. 102, at 5.)[3] Polak did not perform four of those duties. (ECF No. 101-2, at 2-3.)[4] Moon also had sole responsibility for between 32.5% and 37.5% of the grant's deliverables. (ECF No. 101-3, at 3; ECF No. 101-2, at 7-8, 11-12, 15-16; ECF No. 101, at 7; ECF No. 102, at 6.)[5] In addition, only Moon evaluated and processed grant reprogramming. (ECF No. 101-4, at 5; ECF No. 101, at 7; ECF No. 102, at 6.)

In fiscal year 2018, Moon also began "collaborating with members of the Chesapeake Bay Sentinel Site Cooperative to hold a marsh vulnerability assessment and adaptation strategy summit." (ECF No. 101-3, at 3.) "Polak had no responsibilities with respect to the summit." (*Id.*; *see also* ECF No. 101, at 7; ECF No. 102, at 6.) Moreover, "Moon had responsibilities for handling research projects and conferences related to VIMS's role as a [National Estuarine Research Reserve System ("NERRS")] agency that Polak did not perform as a DEQ employee." (ECF No. 101-2, at 4.)[6] These myriad differences establish that Polak and Moon did not "have virtually identical jobs." *Evans*, 936 F.3d at 196.

---

[3] Moon had ten listed duties in fiscal years 2016 and 2017 and eleven in 2018.

[4] Polak claims that she "did in fact work on *some* of" these duties. (ECF No. 102, at 5-6 (emphasis added).) She does not, however, cite anything in the record to support that claim. Accordingly, the Court "consider[s] th[is] fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). In any event, the parties agree that Polak and Moon had different duties.

[5] Polak disputes whether those tasks accounted for between 32.5% and 37.5% of Moon's work time. (ECF No. 102, at 5.) That dispute does not change the Court's analysis because it does not change that Moon—and Moon alone—had responsibility for about one-third of the grant's deliverables.

[6] Polak disputes this fact, arguing that she "had responsibilities of like research projects and conferences, not identical but virtually identical, requiring equal skills, effort, and responsibilities." (ECF No. 102, at 7.) But Polak fails to demonstrate a genuine dispute as to these facts because the evidence she cites to support her ostensible dispute does *not* show that she had any responsibilities related to VIMS's role as a NERRS agency.
 She also cites only her own declaration to support her claim that she and Moon had "virtually identical" responsibilities regarding research projects and conferences. (*Id.*) Polak's

3

Nevertheless, Polak claims that she and Moon had substantially similar jobs because they "shared a significant number of specific duties as CZM Planners." (ECF No. 102, at 12.)[7] For instance, she says that "DEQ could transfer their equal skill, effort and responsibilities from managing one planning district commission to another." (ECF No. 102, at 12.) This argument misses the mark. Polak and Moon did not have substantially similar jobs merely because they had the skills and qualifications to do so.

Polak also says that she and Moon "had the same duties [regarding] strategic planning" and "shared specific duties and responsibilities [regarding] intergovernmental and interagency coordination, including facilitation and identifying of issues, among other things." (*Id.* at 12-13.) Polak further notes that she and Moon had similar education and experience. (*See id.* at 17.) These

---

unsubstantiated assessment of the similarity between her responsibilities and Moon's does not factor into the Court's analysis. *See Larken v. Perkins*, 22 F. App'x 114, 115 n.* (4th Cir. 2001) (affirming a district court's finding that a plaintiff could not "stave off summary judgment" with "his own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation"); *McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 427 F. Supp. 2d 595, 607 (E.D.N.C. 2006) ("Plaintiff's perception of her own experience, performance, and skills is not relevant. It is the perception of the decisionmaker that counts.") Indeed, if Polak could survive summary judgment with nothing more than her allegations, then the Court would effectively "allow [Polak] to transform this motion for summary judgment into a motion to dismiss." *Whitaker v. City of Hopewell*, No. 3:19cv923, 2020 U.S. Dist. LEXIS 231941, at *24 n.19 (E.D. Va. Dec. 9, 2020).

[7] Polak also claims that "Moon testified that their work was virtually identical such that they could substitute for each other in terms of responsibility." (*Id.*) This grossly mischaracterizes Moon's testimony. Moon answered "probably," when asked if "[t]here were situations in which [Polak] substituted for [him] in terms of responsibility?" (ECF No. 102-2, at 12.) In the portions of Moon's deposition to which Polak cites, Moon never describes his and Polak's work as "virtually identical." In fact, the words "virtual," "virtually," or "identical" never appear in *any* part of Moon's deposition that Polak has attached as Exhibit 2 to her opposition brief.

In a different part of her opposition brief, Polak asserts that she "performed virtually identical tasks [to Moon's VIMS-related responsibilities] in the performance of her job with other entities on [National Oceanic and Atmospheric Administration] grants." (ECF No. 102, at 14.) To support this claim, she cites only her own declaration. (*See id.*) For all the reasons stated in footnote 6, *supra*, Polak's unsubstantiated belief that she and Moon had "virtually identical tasks" does not factor into the Court's analysis.

4

arguments also fail. Having similar education and experience does not demonstrate that Polak and Moon had substantially similar jobs. Nor does identifying similar duties between purported comparators when viewing their jobs "at a high level of abstraction." *Wheatley v. Wicomico County*, 390 F.3d 328, 333 (4th Cir. 2004). Indeed, saying that Polak and Moon engaged in "strategic planning" and "intergovernmental and interagency coordination, including facilitation and identif[ication of unspecified] issues" tells the Court little about Polak's and Moon's actual job duties because those highly generalized duties could apply broadly to many government employees both inside and outside of DEQ. (ECF No. 102, at 12-13.) Simply put, "the EPA demands more than a comparison of job functions from a bird's eye view." *Wheatley*, 390 F.3d at 333.

Polak similarly contends that her "Performance Plans for the years from 2016 through her ending date in 2019 match Moon's: strategic planning and evaluation of the Coastal Zone Management Program; CZM grant operation; interagency and intergovernmental coordination activities, including representation of the Program at workshops, conferences, and regular meetings; and working with CZM partners (such as the Middle Peninsula Public Access Authority, the Chickahominy Tribe) to assist in land conservation efforts." (ECF No. 102, at 16.) As an initial matter, Polak cites only to her job descriptions to support her claim that her performance plans match Moon's performance plans. She does not explain or show how her job duties correspond to Moon's. Instead, she makes grand pronouncements about the "clear" "equality of their skills, efforts, and responsibilities," leaving it to the Court to tease out any comparison that might exist between her job and Moon's. (*Id.*)

Moreover, Polak's attempted comparison occurs "at a high level of abstraction" and does not show that she and Moon performed substantially equal jobs. *Wheatley*, 390 F.3d at 333.

Instead, it shows that she and Moon did *some* similar tasks on *different projects* and for *different stakeholders* when comparing their jobs "from a bird's eye view." *Id.* Indeed, Polak concedes that she and Moon did "individual tasks . . . for a particular client, stakeholder or grant recipient that the other did not given that they were assigned to different planning district commissions." (*Id.* at 12.)[8] In other words, she admits that she and Moon performed different tasks, on different grants, for different stakeholders. And she cites nothing to show the similarity of those tasks, grants, and stakeholders.

Perhaps, a plaintiff could establish that she and a purported comparator had substantially similar jobs even though they did different tasks on different grants for different stakeholders. But she must cite evidence to establish that similarity; she cannot rely on general assertions that she and her comparator both worked on grants, went to conferences, and worked with stakeholders to accomplish their organization's goals. For example, one grant may have more stringent requirements or require different tasks than another. DEQ might prioritize certain grants over others. Maybe certain stakeholders demand more of coastal planners than others. Different planning commissions almost certainly face different challenges, and some of those challenges might make a coastal planner's job more difficult. DEQ might deem presentations at some conferences more important than others. The list could go on. Polak does nothing to explain any similarities between Moon's job and the different tasks she performs on different grants for different stakeholders. Rather than developing and presenting an evidentiary record that demonstrates the immateriality of the many specific differences between her job and Moon's job,

---

[8] (*See also id.* at 6 (acknowledging that Moon had responsibility for the VIMS project); ECF No. 102-1, at 4 ("I had no responsibility on the VIMS grants with CZM, in the same way that Mr. Moon had no responsibility with the [Virginia Department of Conservation and Recreation] grants that I managed.").)

Polak tries to establish similarity between her job and Moon's from a 30,000-foot view; this does not suffice. *See, e.g.*, *Spencer*, 919 F.3d at 204-05 ("While comparisons might be drawn between some departments, any such comparison requires the plaintiff to articulate with specificity why the work performed and skills needed by a professor in one department are virtually identical—and not just generally related or of comparable worth—to those in another.").[9]

For these reasons, the Court finds that Polak cannot establish a prima facie EPA claim because she and Moon do not "have virtually identical jobs." *Evans*, 936 F.3d at 196. The Court, therefore, GRANTS DEQ's motion for summary judgment and DIRECTS the Clerk to close this case.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.



Date: 7 July 2021
Richmond, VA

---

[9] *See also id.* at 203 ("Equality under the [EPA] is a demanding threshold requirement"); *id.* at 205 (when the plaintiff and her comparator do work "that can be judged only according to intricate, field-specific, and often subjective criteria," she "must provide the court with more than broad generalities to meet her burden" and cannot merely show that she and her comparator "all performed vaguely related tasks using nominally comparable skills"); *id.* (to establish a prima facie EPA claim, a plaintiff must present "evidence showing the jobs were equal in the strict sense of involving 'virtually identical' work, skill, effort, and responsibility, not in the loose sense of having some comparative value" (quoting *Wheatley*, 390 F.3d at 333)); *Wheatley*, 390 F.3d at 333 ("[J]obs do not automatically involve equal effort or responsibility even if they 'entail most of the same routine duties.'" (quoting *Hodgson v. Fairmont Supply Co.*, 454 F.2d 490, 493 (4th Cir. 1972))); *Houck v. Va. Polytechnic Institute*, 10 F.3d 204, 206 (4th Cir. 1993) (a plaintiff must compare her work "factor by factor with the male comparator").